IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRIAN TUCKER, et al.,

      Plaintiffs,

v.             CIVIL ACTION NO.   2:13-cv-04480

MOMENTIVE PERFORMANCE
MATERIALS USA INC., et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

   Pending before the Court is Defendant Airgas USA, LLC's ("Airgas USA") opposition to Plaintiffs' Supplemental Motion for Leave to Amend Complaint.  (ECF No. 629.)   For the reasons stated herein, Airgas USA's objection is **SUSTAINED**.

*I. Background*

   This action, alleging various claims based on Plaintiff Brian Tucker's exposure to hazardous chemicals while working for Defendant Momentive Performance Materials USA, Inc. ("Momentive"), was initially removed to this Court on March 6, 2013.  On July 29, 2014, Plaintiffs amended their complaint to include, for the first time, specific entities alleged to have supplied the chemicals at issue to Momentive (the "supplier defendants").  (ECF No. 67.) Through a lengthy and at times contentious discovery process, Plaintiffs have gradually been able to discover the information necessary to refine the appropriate class of supplier defendants.   This

1

process has involved multiple amendments to Plaintiffs' complaint and the voluntary dismissal of several supplier defendants. On November 30, 2015, Plaintiffs filed a motion for leave to file a fourth amended complaint adding several new supplier defendants, including Airgas Specialty Products ("ASP"). (ECF No. 551.) Subsequently, upon learning the identity of still more supplier defendants as the result of a court order compelling certain discovery responses, Plaintiffs filed a supplemental motion for leave to file a fourth amended complaint on February 26, 2016. (ECF No. 619.) In that motion, Plaintiffs seeks to "withdraw the Fourth Amended Complaint they filed on November 30, 2015 and request leave to substitute the Fourth Amended Complaint attached to this Motion." (*Id.* at 2.) At a telephonic motions hearing on April 8, 2016, the Court granted that motion, ordered that the fourth amended complaint be filed, and deemed that complaint served on all existing defendants to the case as of that date. (*See* ECF No. 645.)

Airgas USA was the only party to object to Plaintiffs' supplemental motion for leave to amend, and the Court took that objection under advisement at the telephonic motions hearing. Airgas USA's objection is to Plaintiffs' attempt to name ASP, its sister corporate entity. As noted above, many of the new defendants identified in the fourth amended complaint had previously been unknown to the plaintiffs, their identity only uncovered as the result of the plaintiffs' diligence throughout a protracted discovery process and a court order granting a motion to compel certain discovery responses. (*See* ECF No. 612.) With respect to ASP, however, the record tells a different story. As Plaintiffs admit, Momentive listed ASP as a supplier of chemicals in a discovery response dated March 7, 2014. (ECF No. 604, Ex. 1 at 5.) Those same discovery materials further included a material safety data sheet generally identifying "Airgas INC." as a supplier of ammonia. (*Id.*, Ex. 3.) Plaintiffs claim that this information led them to name Airgas

USA as a party in the second amended complaint, filed on July 29, 2014, because "that was the only Airgas entity listed in the West Virginia Secretary of State and Plaintiffs[ ] believed this was the proper party in interest." (ECF No. 620 at 7.)

However, Plaintiffs did not actually name Airgas USA in the second amended complaint. Rather, a typographical error caused them to name "Airgas USE" in the second amended complaint, with the result being that Airgas USA was never served with a copy of that version of the complaint. Instead, when Plaintiffs attempted to effectuate service through the office of the West Virginia Secretary of State they were informed that the office had "no listing" for the defendant named on the summons and that service was therefore not made. (*See* ECF No. 534, Ex. A.) Despite receiving this notice on November 7, 2014, Plaintiffs made no further effort to serve Airgas USA or correct their spelling error until May 7, 2015, when they moved the Court for leave to file a third amended complaint and attached a proposed complaint correctly listing Airgas USA. (ECF No. 272.) Eventually that motion was granted and Airgas USA was served with a copy of the third amended complaint on September 25, 2015. (ECF No. 428.) Nonetheless, Airgas USA was not properly served until well over a year after it was originally named as a party to the present litigation, well outside of the 120-day window for service imposed by Rule 4(m) of the Federal Rules of Civil Procedure.[1] At a previously held telephonic motions conference, this Court determined that Plaintiffs' spelling error in the second amended complaint did not constitute good cause for excusing their failure in effectuating timely service and granted Airgas USA's motion to dismiss on that basis. (ECF No. 645.)

---

[1] Rule 4(m) was amended, effective December 1, 2015, to reduce the applicable time limit to 90 days. However, as Plaintiffs' complaint was filed prior to that amendment, the time limit for service of that complaint is set by the prior version of Rule 4(m).

Thus, this Court has already determined that Plaintiffs' lack of diligence in effectuating service on Airgas USA justified the dismissal of that defendant. Nevertheless, Plaintiffs now seek to amend their pleading to add ASP, Airgas USA's sister corporation, on the basis that they have only recently become aware that this entity is the proper party in interest to the current suit. Pursuant to the Court's most recent scheduling order, however, the deadline for amended pleadings was June 1, 2015, well before Plaintiffs began to pursue their most recent motion to amend. (*See* ECF No. 262.) Airgas USA argues that, with respect to their naming of ASP, Plaintiffs have failed to demonstrate good cause to justify its out of time amendment to the scheduling order and that allowing such amendment would cause ASP unfair prejudice.

## *II.     Legal Standard*

When a plaintiff seeks to amend his complaint after expiration of a court's scheduling deadline with respect to amended pleadings, that plaintiff "first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995); *see* Fed. R. Civ. P. 16(b) ("A schedule may be modified only for good cause and with the judge's consent."); *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (holding, in accordance with the other federal courts of appeals to have addressed the issue, that "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend pleadings"). "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cnty.*, 182 F. App'x 156, 162 (4th Cir. 2006) (citing *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631–32

4

(D. Md. 2003)); *see also Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) ("'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or the party's attorney) has not acted diligently in compliance with the schedule.'" (alterations in original) (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure Civ. 3d* § 1522.2 (3d Ed. 2010))); *Marcum*, 163 F.R.D. at 255 ("[T]he touchstone of 'good cause' under Rule 16(b) is diligence.").

"Lack of diligence and carelessness are the 'hallmarks of failure to meet the good cause standard.'" *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 707 (D. Md. 2011) (quoting *W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D. W. Va. 2001)). Moreover, because the Rule 16 inquiry is primarily focused on the diligence of the moving party, a mere "lack of prejudice to one's opponent does not establish good cause." *Halpern v. Wake Forest Univ. Health Sciences*, 268 F.R.D. 264, 274 (M.D.N.C. 2010); *see also Marcum*, 163 F.R.D. at 254 ("Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party was not diligent, the inquiry should end.*" (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992))).

Once a plaintiff demonstrates good cause, then amendment should be allowed in accordance with the standard set forth by Rule 15(a), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Whereas the Rule 16(b)

5

analysis focuses on the diligence of the moving party, the Rule 15(a) inquiry focuses "substantially on the prejudice to the opposing party if leave to amend is granted." *Marcum*, 163 F.R.D. at 254 n.8. As this Court has previously recognized:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Burton v. United States*, 199 F.R.D. 194, 199 (S.D. W. Va. 2001) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "Although the decision whether to grant leave rests within the sound discretion of the district court, the federal rules strongly favor granting leave to amend." *Medigen of Kentucky, Inc. v. Pub. Serv. Comm'n of W. Va.*, 985 F.2d 164, 167–68 (4th Cir. 1993) (citing *National Bank v. Pearson*, 863 F.2d 322, 327 (4th Cir. 1988)).

### III. Discussion

Applying this standard to the present case, the Court cannot determine that Plaintiffs have demonstrated the requisite diligence with respect to ASP to justify an out of time modification to the scheduling order. Plaintiffs' stated reason for waiting so long to name ASP is that, at the time they became aware of ASP's involvement in the case, Airgas USA was the only Airgas entity listed in the West Virginia Secretary of State database. Although Airgas USA disputes that contention, there is no evidence in the record before this Court that would cause it to question the validity of Plaintiffs' claim. Even assuming it to be true, however, Plaintiffs were not diligent in pursuing their case against Airgas USA. As noted above, Plaintiffs misspelled that entity's name in the second amended complaint and did not effectuate service until well over a year after it became aware that Airgas was involved in the case. As this Court has already determined,

Plaintiffs have provided no good reason to justify that delay. Plaintiffs were aware that Airgas USA had not been served in November 2014, but did not make any effort to correct their error or ensure that service was made until five months later when they moved to amend their complaint. Thus, Plaintiffs' reason for seeking to add ASP out of time directly implicates their prior carelessness in attempting to pursue their claims against ASP's sister entity. Had Plaintiffs diligently pursued their claims against the Airgas entity that was listed, they very likely would have discovered ASP's role in the corporate structure much sooner and would not now require an extension of the scheduling order in order to include that party in their case.

Given these facts, this case simply does not present the scenario in which "evidence supporting the proposed amendment would not have been discovered 'in the exercise of reasonable diligence' until after the amendment deadline had passed." *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, 218 F.R.D. 455, 460 (M.D.N.C. 2003) (quoting *Studio Frames, Ltd. v. Village Ins. Agency, Inc.*, No. 1:01CV876, 2003 WL 1785802, at *1 (M.D.N.C. Mar. 31, 2003)). Rather, even assuming that ASP was not listed in the state database at the time Plaintiffs sought to name an Airgas defendant in the summer of 2014, Plaintiffs' own carelessness resulted in no Airgas entity being made a party to this litigation until September 2015. Once Airgas USA was properly served, Plaintiffs became aware of ASP's proper role in this litigation rather quickly; ASP was listed as a new defendant in Plaintiffs' original motion for leave to file a fourth amended complaint, filed on November 30, 2015, just over two months after Airgas USA was properly made a party. (*See* ECF No. 551.) Thus, Plaintiffs failure to add ASP as a party before the June 1, 2015 deadline for amended pleadings is directly traceable to their failure to properly serve Airgas USA. Given the Court's previous finding that such failure was the result of carelessness and not justified by

7

any good cause, the Court similarly finds that Plaintiffs were not diligent in pursuing their claims against ASP during the time period for amended pleadings set by this Court's scheduling order. Accordingly, the Court finds no good cause to justify modifying that scheduling order to allow for an out of time amendment to include ASP as a defendant.

### IV. Conclusion

For the reasons stated herein, the Court **SUSTAINS** Airgas USA's objection to Plaintiffs' Supplemental Motion for Leave to Amend Complaint. (ECF No. 629.) Accordingly, the Court **ORDERS** that all references to Airgas Specialty Products be **STRICKEN** from Plaintiffs' Fourth Amended Complaint, (ECF No. 646). Further, because Airgas Specialty Products has already been served and filed an answer, the Court **ORDERS** that Airgas Specialty Products be **DISMISSED** as a defendant to the current action.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 24, 2016

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE